AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

FILED
At Albuquerque NM

APR 1 2 2012

MATTHEW J. DYKMAN
CLERK

| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   12-mJ- 884 |
| Nelson K. Teller | ) | 12-mG-019 |
| YOB 1986 | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  March 12, 2012 in the County of McKinley, In the district of New Mexico, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| *18 USC 1152* | *Crimes in Indian Country* |
| *18 USC 113(a)(6)* | *Assault Resulting in Serious Bodily Injury* |
| *18 USC 2111* | *Robbery* |
| *18 USC 2* | *Aiding and abetting* |

This criminal complaint is based on these facts:  **\*See attached\***

☑ Continued on attached sheet.

_____
*Complainant's signature*

Denise Begaye, Criminal Investigator
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/12/12

City and State: Gallup, N.M.

_____
*Judge's signature*

Robert W. Ionta
*Printed name and title*
US Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA                )
                                        )
                                        )          Case No. _12-mJ-884_
VS                                      )                  _12-mG-019_
                                        )
Nelson Kee Teller  and                  )
Mika-Jon Lowley                         )

## AFFIDAVIT

I, the undersigned, being duly sworn, depose and states as follows:

1) Your affiant is a Criminal Investigator (CI) for the Navajo Department of Criminal Investigation (NDCI), currently assigned to the Crownpoint Police District, Crownpoint, New Mexico. Your affiant has served in the capacity of a Police Officer and a Criminal Investigator of the NDCI for fifteen (15) years, and currently has primary investigative responsibilities pertaining to crimes occurring on the Navajo Indian Reservation. The information set forth in this affidavit has been derived from my own investigation, communicated to me by other sworn law enforcement officers and other reliable sources.

2) On March 12, 2012, Navajo Nation Police Officers responded to the Fire Rock Navajo Casino in response to a shooting with a BB gun, upon arrival Officers learned that a patron had been shot in the face in the parking lot of the casino.

3) Further investigation revealed that the victim, Francisco Mendoza Sr., a non-Indian male and his wife Valenciano Juana, had parked their PT Cruiser in the parking lot. Francisco got out and stood at the end of the car waiting for Valenciano. Valenciano noticed a dark colored Sports Utility Vehicle (SUV) stop, the front seat passenger got out and approached Francisco. The male subject demanded money from Francisco or he was going to shoot him. Francisco told the subject he did not have any money and the subject then pulled out a black hand gun from his jacket and pointed it at Francisco shooting him in the face.

1

4) Francisco turned around and got back into the driver's seat to shield his wife from the attack. Francisco heard about ten (10) more pops go off and then the driver's side window shattered. Francisco said he saw the subject run through the parking lot to the dark colored SUV which was waiting on the other side of the parked vehicles. Francisco and his wife ran to the entrance and reported the incident to Fire Rock Casino security.

5) Investigators reviewed the Fire Rock Casino surveillance video of the east parking lot where the incident happened. The video revealed a dark colored SUV drive around the parking lot and at one point park next to a white sedan. The driver got out and looked like he was trying to gain entrance to the white car. The driver got back in when the casino shuttle drove by. The SUV then left and made a sudden stop when the front passenger got out and walked in front of the SUV. The brake lights of a sedan went off several times and the subject ran in between the vehicles and got back into the SUV and drove away, leaving the parking lot. Francisco and his wife are then seen running toward the entrance of the casino.

6) The suspect SUV is described as dark colored with five strips of tape horizontally on the right rear cargo window. Francisco described the subject as Native American wearing dark clothing about 190 pounds and 21-22 years of age.

7) Francisco was seen by the EMT's and later taken to Rehoboth McKinley Christian Hospital in Gallup, New Mexico. The emergency room doctor said they would not be able to remove the BB from Francisco's left cheek because it would cause more damage to the nerve and if it were to be removed it may result in paralysis of the left side of the face.

8) On March 13, 2012 your affiant met with Gallup Police Detective Pat Salazar whom was also investigating a BB gun shooting at the Shell Gas Station the same night of the shooting at the Fire Rock Casino. The victim from the Shell Gas Station was shot in the face with a BB gun when he refused to give the subject money. Detective Salazar reported that the vehicle in his investigation was described as being similar to the one involved in the Fire Rock Casino shooting.

9) On March 15, 2012 an undercover agent with the Gallup Police Department located the described SUV with the five strips of tape on the right rear cargo window. A stop was made and the vehicle was towed to the Gallup Police tow yard. The occupants were Nelson Kee Teller, Henrietta Long and their two children. Nelson and Henrietta were taken to the Gallup Police Department where they were questioned.

10) Henrietta Long did not know about the shooting and said she was home in Churchrock with her children. Nelson indicated that on the night in question, he had returned a chain saw to his cousin Jason Teller. A friend of Jason's known only as Mika-Jon, asked Nelson to take him back home to Iyanbito. Nelson agreed and said Mika-Jon asked if they could go into Gallup and get some beer. Nelson agreed and traveled on Interstate 40 west bound and exited at mile marker 26 where they stopped at the Shell Gas Station. Thereafter Nelson said he stopped the vehicle and Mika-Jon pulled out a gun, got out of the vehicle and approached a white truck. Nelson said he parked behind a pillar and did not see what was going on but Mika-Jon ran back to the vehicle and said, "Go, go, go!" Nelson said he drove off and was freaking out about the whole thing. Mika-Jon asked why Nelson didn't back him up.

11) Nelson said Mika-Jon suggested they do the same thing at the Fire Rock Casino. Nelson said he was afraid that Mika-Jon would hurt him so he went along with what he was being told. Nelson said they drove around the parking lot and Mika-Jon got out of the vehicle and approached a person. Nelson continued to drive around on the other side of the parked vehicles and waited for Mika-Jon. Nelson said he did not want Mika-Jon to retaliate against him or his family so he waited for Mika-Jon in the parking lot of the casino and the Shell Gas Station.

12) Mika-Jon got back in the vehicle and they left the parking lot and drove east on the frontage road. Nelson said they stopped at the intersection of State Road 566 and State Road 118 where he told Mika-Jon, "What the hell are you doing?" Mika-Jon responded by telling Nelson to drop him off at his house because he didn't want to be with "Little bitches." Nelson said he dropped Mika-Jon off at the church in Iyanbito and he drove home.

13) On March 19, 2012 Mika-Jon Lowley was contacted at his home located at rural address 7A Dakota Loop in Iyanbito, New Mexico. Mika-Jon agreed to speak with law enforcement and voluntarily went with Gallup PD Detective Salazar and FBI Special Agent Matthew Roe to the Gallup Police Department.

14) Mika-Jon was advised of his Miranda Rights. Initially, Mika-Jon said he knew nothing of the shootings, but after further questioning, Mika-Jon said that he was given a ride from Jason's house and Nelson asked if he wanted to go into Gallup. Mika-Jon said okay and they went to the gas station, Nelson gave him a black hand gun.

3

15) Mika-Jon said while at the Shell Gas Station he went up to a guy and demanded money from him and thought the guy was going to do something so he shot him in the face. Mika-Jon turned around and ran back toward the vehicle.

16) Mika-Jon said they left the Shell Gas Station and Nelson drove to the Fire Rock Casino where Nelson told Mika-Jon to do the same thing. Nelson stopped the vehicle and Mika-Jon got out and walked up to a guy and asked if he could please have some money. The guy said he did not have any money and again Mika-Jon asked for money and then Mika-Jon thought the guy was going to do something so he shot the gun and did not know he shot the guy in the face.

17) Mika-Jon said he started running toward the SUV which was parked on the other side of the parked vehicles and they left. Mika-Jon said he was dropped off at his house in Iyanbito. Mika-Jon said he left the gun in the SUV and knows that the gun belonged to Jason Teller.

18) On March 22, 2012 Nelson Teller said after the shooting on his way home he turned off at a railroad transmitter utility shed and threw the BB gun and the BB's over a fence line near the railroad tracks. Investigators could not locate the BB gun.

19) With the registered owner Henrietta Long and Nelson Teller's consent, the SUV was processed at the Gallup Police tow yard. There was a copper colored BB found underneath the passenger side seat and another copper colored BB that was found on the passenger side floor board near the "A" pillar. Both BB's were collected and taken into evidence by Gallup PD Detective Salazar.

20) In view of the above facts, the affiant submits there is probable cause to believe that Nelson Kee Teller, a Navajo Indian male and Mika-Jon Lowley, a Navajo Indian male did violate United States Code, Title 18, Section 1152 Crimes in Indian Country; United States Code, Title 18, 113(a)(6) Assault Resulting in Serious Bodily Injury; United States Code, Title 18, 2111 Robbery; Title 18 United States Code Section 2, Aiding and Abetting.

Respectfully submitted,

*Denise Begaye*

DENISE BEGAYE
Criminal Investigation
Navajo Department of Criminal
Investigation

Crownpoint, New Mexico

Subscribed and sworn
to before me this _12_ day
of April 2012.

Honorable Judge Robert Ionta,
UNITED STATES MAGISTRATE JUDGE